United States District Court

District of Massachusetts

```
_____
                               )
Denise Fisher f/k/a Denise     )
Santry                         )
                               )
          Plaintiff,           )
                               )
          v.                   )     Civil Action No.
                               )     17-12532-NMG
HSBC Bank as Trustee et al.    )
                               )
          Defendants.          )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

This dispute arises from a Home Affordable Modification Program ("HAMP") Trial Period Plan with respect to a mortgage on real estate located on Revere Street in Hull, Massachusetts ("the Property"). Denise Fisher ("plaintiff" or "Fisher") alleges that HSBC Bank, USA, N.A. as trustee for the holders of Deutsche Mortgage Securities Trust Mortgage Pass Through Certificates Series 2004-2 ("HSBC Bank") and its predecessor in interest Bank of America, N.A. ("BANA") breached a contract in which they agreed to consider a loan modification if certain conditions were met. In addition to the bank defendants, Fisher

-1-

brings this action against Ocwen Loan Servicing LLC ("Ocwen"), the current servicer of her loan.  Pending before the Court are separate motions of 1) BANA and 2) HSBC Bank and Ocwen to dismiss the complaint.

## I.   **Background**

Denise Fisher originally acquired title to real estate located on Revere Street in Hull, Massachusetts in 1986.  She became the sole owner of the property in December, 1992.  In November, 2003, Fisher executed a promissory note in favor of Greenpoint Mortgage Funding Inc. ("Greenpoint") to evidence a loan ("the note").  On that same date, as security for repayment of the note, Fisher granted a mortgage lien to Mortgage Electronic Registration Systems, Inc. as nominee for Greenpoint ("the mortgage").  In November, 2011, the mortgage was assigned to HSBC Bank.  Ocwen became the loan servicer in or about December, 2013.

In late 2009, Fisher received a HAMP Trial Period Plan ("TPP") package from BANA, the loan servicer before Ocwen.  The TPP provides that Ms. Fisher would make three payments on or before January 1, February 1 and March 1, 2010, respectively. The plan also provides that the trial period began on January 1, 2010, and would end on the earlier of the first day of the month

following the month in which the last TPP payment is due or the termination of the plan.

Different sections of the TPP bear on the parties' divergent arguments so it is appropriate to include those sections in their entirety:

Section 2.F

If prior to the Modification Effective Date [April 1, 2010], (i) the Servicer does not provide me a fully executed copy of this plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of the Plan; or (iii) the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate.  In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me.

Section 2.G

I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I received a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date [April 1, 2010] has passed.  I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan. . . .

Section 3

Once Servicer is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at

-3-

the end of the Trial Period under Section 2.D, above, the
Servicer will determine the new payment amount.  If I
comply with the requirements in Section 2 and my
representations in Section 1 continue to be true in all
material respects, the Servicer will send me a Modification
Agreement for my signature which will modify my Loan
Documents as necessary to reflect this new payment amount
and waive any unpaid late charged accrued to date.

The TPP agreement was signed by Fisher in December, 2009,
and she began making TPP payments in January, 2010.[1]  BANA did
not send a loan modification agreement after the three-month
trial period concluded.  Fisher alleges that she was "directed
by a Bank of America Representative to continue sending in her
payments" in the modified amount and that she did so, until
September, 2011.  The complaint asserts that Fisher considered
filing for bankruptcy but decided not to because she believed
she would receive a loan modification.  Fisher claims that she
timely made 18 consecutive monthly payments and that BANA
accepted those payments until September, 2011, when BANA sent
back the payment she made that month enclosed with a written
letter.

Fisher inquired into why she did not receive a modification
agreement from BANA.  In early 2012 she received several letters

---

[1] Although BANA did not sign the TPP, it does not contend that as
a result no contract was formed.  Furthermore, plaintiff makes a
plausible claim that there is a valid contract because
defendants accepted plaintiff's modified payments for 18 months.

from BANA that informed her that Wells Fargo was her "investor".
In a subsequent conversation, a BANA Customer Relationship
Manager notified Fisher that her modification was denied
"because her investor did not participate in HAMP" [the Home
Affordable Modification Program].  In March, 2012, Fisher
received a letter from BANA that stated that she did not qualify
for a loan modification because "her only source of income was
unemployment benefits."  She maintains that statement was
inaccurate and that her HAMP application specified that she was
gainfully employed.

Plaintiff alleges that HSBC and BANA breached an oral
promise to modify her payment schedule and that BANA and its
successors in interest should be estopped from denying the loan
modification.  She also seeks a declaratory judgment that a loan
modification occurred and that it would be unfair and
inequitable for HSBC to be permitted to foreclose on the
Property.

Fisher filed this action in the Massachusetts Superior
Court for Plymouth County in September, 2017, and amended her
complaint in November, 2017.  HSBC and Ocwen removed the case to
this Court in December, 2017.

## II.  __Analysis__

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).  Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollet, 83 F. Supp. 2d at 208.

Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Threadbare recitals of the legal elements which are supported by mere conclusory statements do not suffice to state

-6-

a cause of action. <u>Id.</u>  Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct. <u>Id.</u> at 1950.

### A. Breach of contract

Fisher submits that BANA "implicitly" promised to modify her loan if she did not file for bankruptcy.  Defendants respond that the claim is barred by the statute of limitations and the statute of frauds and that the complaint does not state a cognizable claim for relief.

#### 1. Statute of Frauds

The Massachusetts Statute of Frauds provides that

> No action shall be brought . . . [u]pon a contract for the sale of lands . . . or of any interest in or concerning them . . . [u]nless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.

M.G.L. c. 259, § 1.

The parties agree that the underlying mortgage between the parties is subject to the statute of frauds.  Plaintiff insists, however, that BANA modified the TPP orally and that such modification is not proscribed by the statue of frauds.  There is currently conflicting case law in this district on that kind

of modification, namely a reduction in interest rate and thus a corresponding reduction in the amount of monthly payments. Compare <u>French</u> v. <u>Chase Bank, N.A.</u>, No. 10-CV-11330-RGS, 2012 WL 273724, at *2 (D. Mass. Jan. 31, 2012) (concluding that TPP is subject to statute of frauds because it is "a contract affecting a mortgage") <u>with</u> <u>Nickerson-Reti</u> v. <u>Bank of Am., N.A.</u>, No. CV 13-12316-FDS, 2018 WL 2271013, at *11 (D. Mass. May 17, 2018) (holding that "the statute of frauds does not apply to the TPP, which is not an agreement to modify the loan or the mortgage"). This Court agrees with the latter approach.

The TPP explicitly states that "the Plan is not a modification of the Loan Documents" and it is clear that it does not modify the mortgage.  Instead, the TPP is preparatory to a modification of the loan.  Section 2.G of the agreement provides that

> the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I received a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date [April 1, 2010] has passed.

The TPP similarly provides that no part of the contract constitutes "a satisfaction or release in whole or in part of the obligations contained in the Loan documents."

Therefore, this Court agrees with the conclusion of the

Nickerson-Reti court:

> to the extent plaintiff contends that she had a fully
> enforceable, permanent modification of her loan and
> mortgage, the statute of frauds bars that claim. However,
> the statute of frauds does not apply to the TPP, which is
> not an agreement to modify the loan or the mortgage.

Nickerson-Reti, 2018 WL 2271013 at *11.

### 2. Statute of Limitations

Defendants next argue that plaintiff's breach of contract

claim is barred by the statute of limitations.

An action for breach of contract must be brought within six

years after the cause of action accrues. M.G.L. c. 260, § 2.  As

a general rule, "a contract claim accrues at the time of the

breach". Melrose Hous. Auth. v. New Hampshire Ins. Co., 402

Mass. 27, 32 (1988) (citation omitted).  The statute of

limitations does not begin to run, however, "until the plaintiff

knows or reasonably should know that he or she has been harmed."

Williams v. Ely, 423 Mass. 467, 473 (1996).

Plaintiff alleges that she was "directed by a [BANA]

representative to continue sending in" her modified payments

after the three-month trial period ended.  She also submits that

BANA accepted those payments until September, 2011, when BANA

sent back her payment "by written letter dated September 6th,

2011." Accepting all plausibly alleged facts in plaintiff's complaint as true, Fisher exercised reasonable diligence and could not have known about the breach before September 6, 2011. See Riley v. Presnell, 409 Mass. 239, 245 (1991). Because this complaint was filed on September 1, 2017, the six year statute of limitations does not bar her action.

### 3. Failure to state a claim

BANA maintains that plaintiff does not state a plausible claim for breach of contract. Fisher rejoins that she has adequately pled facts stating a claim that BANA agreed to modify the plaintiff's loan "in implicit exchange for her agreement not to file for bankruptcy protection", and that BANA breached that promise.

Under Massachusetts law, a plaintiff asserting breach of contract must demonstrate that (1) an agreement was made between plaintiff and defendant that was supported by consideration, (2) plaintiff was ready, willing and able to perform, (3) defendant failed to perform a material obligation provided for in the contract and (4) plaintiff suffered harm caused by defendant's failure to perform. Coady Corp. v. Toyota Motor Distributors, Inc., 346 F.Supp.2d 225, 248 (D. Mass. 2003), aff'd, 361 F.3d 50

(1st Cir. 2004) (citing <u>Singarella</u> v. <u>City of Boston</u>, 342 Mass. 385, 387 (1961)).

This Court must accept as true all factual allegations contained in a complaint, provided that those allegations are not legal conclusions couched in factual clothing. <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 555).  Under that standard, plaintiff has stated a claim for breach of contract.

Fisher alleges that a BANA representative told her to continue sending in modified payments.  Drawing all reasonable inferences in her favor, it is plausible that the parties agreed to modify her loan if she would not file for bankruptcy.  Such a modification is permitted under Massachusetts law because the mode of performance provided by a written contract "may be varied by a subsequent oral agreement based upon a valid consideration." <u>Siegel</u> v. <u>Knott</u>, 316 Mass. 526, 528 (1944) (collecting cases).  Massachusetts places a heavy burden of evidence on the party seeking to modify an integrated written contract by a subsequent oral agreement. <u>Cambridgeport Sav. Bank</u> v. <u>Boersner</u>, 413 Mass. 432, 439 n. 10 (1992).  At this stage of the litigation, however, plaintiff must merely allege sufficient plausible facts, and she has done so.

Next, BANA contends that plaintiff has not adequately plead actual damages arising from its alleged breach.  Drawing all reasonable inferences in Fisher's favor, however, the complaint contains sufficient factual allegations to conclude that the Property will be foreclosed on if plaintiff does not receive the loan modification.  Further, plaintiff purportedly lost any rights she might have had under the Truth in Lending Act because the statute of limitations as to that claim ran out while she was expecting BANA's permanent loan modification to arrive.

Finally, BANA proclaims that "plaintiff's own performance under the Trial Period Plan is speculative at best" but the complaint alleges that she complied with requirements of the TPP and that she made TPP payments for 18 months before BANA rejected one.  Section 3 of the TPP states that BANA "will send [her] a Modification Agreement" if she makes her payments and provides her financial record.  The complaint alleges she did both.  At this stage, that is enough.

Fisher's breach of contract claim is barred by neither the statute of frauds not the statute of limitations.  She has plausibly alleged the cause of action.  Defendants' motions to dismiss will, with respect to Count I, be denied. Cf. Durmic v. J.P. Morgan Chase Bank, NA, No. 10-CV-10380-RGS, 2010 WL

4825632, at *2-*4 (D. Mass. Nov. 24, 2010) (denying motion to
dismiss breach of contract claim where plaintiff did not receive
executed copy of TPP from bank).

**B. Promissory estoppel**

Defendants insist that plaintiff has not stated a
cognizable claim for promissory estoppel because she has not
alleged facts sufficient to show that she reasonably relied and
acted upon a promise by BANA or that she was damaged by her
reliance.

To prevail on a claim of promissory estoppel under
Massachusetts law, a plaintiff must demonstrate that she
"reasonably relied on the alleged promise to [her] detriment".
Hall v. Horizon House Microwave, 24 Mass. App. Ct. 84, 94
(1987).

BANA promised that it would "send [her] a Modification
Agreement for [her] signature which will modify [her] Loan" if
she provided the required financial forms and made three TPP
payments.  Fisher made modified payments for 18 months, until
BANA stated it no longer would accept them.  She alleges that a
BANA representative told her to continue sending such payments
after the trial period had ended.  To her alleged detriment, she
did not file for bankruptcy and lost a viable Truth in Lending

Act claim.  Accepting all of plaintiff's plausibly alleged facts as true, it was reasonable for her to continue making modified loan payments in response to the instruction of the BANA representative.  Although the TPP provides that it would terminate on April 1, 2010, if Fisher did not receive a copy of the loan modification agreement, it was reasonable to believe that BANA waived that provision by virtue of the representative's assurances and its pattern of accepting modified monthly payments through August, 2011.

Plaintiff has adequately pled a claim for promissory estoppel and defendants' motions to dismiss will, with respect to Count II, be denied.

### C. Declaratory judgment

Defendants submit that this Court should dismiss plaintiff's claim for declaratory relief because the complaint does not state a cognizable claim for breach of contract or promissory estoppel.  Because this Court finds that plaintiff has stated plausible claims for relief on both counts, it will not dismiss the claim for a declaratory judgment.  Defendants' motions to dismiss will, with respect to Count III, be denied.

## ORDER

For the foregoing reasons, the motion of Bank of America, N.A., to dismiss (Docket No. 16) is **DENIED**.  The motion of defendants HSBC Bank USA and Ocwen Loan Servicing LLC to dismiss (Docket No. 17) is **DENIED**.

**So ordered.**

 /s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated September 17, 2018

-15-